# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

CHERI L. HAYES,

                                 Plaintiff,

    v.                                                                1:13-CV-1566
                                                                               (MAD/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.

---

MAGGIE W. MCOMBER, ESQ., for Plaintiff
GRAHAM MORRISON, SPECIAL ASS'T U.S. ATTORNEY, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On November 3, 2010, plaintiff "protectively filed" an application for Social Security Disability Insurance Benefits ("DIB"). (Administrative Transcript ("T.") 13, 68, 105-11, 132). Plaintiff alleged disability, beginning March 24, 2010, involving, *inter alia*, scoliosis, neck/back pain, fibromyalgia, anxiety, depression, and restless sleep. (T. 132, 136).

Plaintiff's application was initially denied on February 8, 2011. (T. 69-73). After a hearing on February 24, 2012, at which plaintiff testified (T. 35-67), Administrative Law Judge ("ALJ") Michelle S. Marcus denied the application in a decision issued on August 9, 2012 (T. 13-30). The ALJ's determination became the

final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on November 7, 2013. (T. 1-6).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the

2

claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Selian*, 708 F.3d at 418 & n.2.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence

3

must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. **FACTS**

As of the date of the administrative hearing in February 2012, plaintiff was 47 years old. (T. 39). Plaintiff completed eighth grade, but subsequently earned a GED. (T. 43, 432). She resided with her disabled husband and two foster children–aged four months and nine years old. (T. 39, 40-41). Plaintiff acknowledged that she could generally care for herself–sometimes with considerable difficulty–and that she provided care for her foster children and pets, with substantial help from her husband. (T. 41-42, 49-50, 145-46). Plaintiff did very limited housekeeping and meal preparation, and occasionally drove short distances to transport her foster children and/or to shop for brief periods. (T. 42, 50, 53-55, 57, 147-48). Plaintiff reported a

4

substantial employment history that was interrupted, in 2008, after her oldest son committed suicide, and ended, in 2010, allegedly because of plaintiff's back pain. (T. 44-45, 137, 158-63).

Plaintiff complained of chronic and intense radiating back and neck pain, which started to substantially restrict her daily activities in 2010, and then became steadily worse over time, despite medication and various treatment regimens. (T. 47-48, 64-65, 152-54). More recently, she developed problems with her right shoulder that limited her ability to move and lift with her right arm. (T. 46-47). Plaintiff claimed that her pain substantially interfered with her sleep, and was aggravated by virtually any physical activity, including sitting, standing, or walking for prolonged periods. (T. 54, 55-56, 148, 150-51). She also claimed to suffer from recurrent depression and anxiety, which started after her son's suicide in 2006, and which, despite some improvement with certain medications, severely limited her social interaction and her prior life activities. (T. 62-64, 149, 154-55, 270, 309). Plaintiff's ability to take prescribed medication or seek medical treatment has been periodically limited by the lack of health insurance and financial problems. (T. 43, 48, 60-61, 179).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 16-17, 19-29). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. **ALJ's DECISION**

As an initial matter, the ALJ determined that plaintiff met the insured status

5

requirements for DIB benefits through March 31, 2015. (T.15). At step one of the sequential analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on March 24, 2010. (T. 15). Next, the ALJ determined that plaintiff's "sprain and strain cervical and lumbar spine, mild degenerative disc disease of the cervical and lumbar spine, myofascial pain syndrome, right rotator cuff tendinitis and depression" were "severe" impairments. (T. 15). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of the listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P., including the listings for major dysfunction of a joint, impairments of the spine, and affective disorders. (T. 15-18).

The ALJ next assessed plaintiff's residual functional capacity (RFC). She concluded that plaintiff retained the RFC to perform "light work" as defined at 20 C.F.R. § 404.1567(b), but which did not require her to lift overhead with the right upper extremity or require her to understand and execute complex or detailed instructions. (T. 18-29). While the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the ALJ decided that the plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible, to the extent they were inconsistent with the ALJ's RFC determination. (T. 19-20).

At step four, the ALJ found that plaintiff could not perform her past relevant work, which involved medium to heavy exertional demands. (T. 29). The ALJ proceeded to step five and determined that a finding of "not disabled" was directed by

6

Medical-Vocational Rule 202.21 because plaintiff's additional impairments had little effect on the occupational base of unskilled light work. (T. 30). The ALJ did not seek the advice of a vocation expert in determining that jobs existed in significant numbers in the national economy that plaintiff could perform. (T. 30).

## V. ISSUES IN CONTENTION

Plaintiff's only stated argument on appeal is that the ALJ committed reversible error by not following the treating physician rule and failing to give controlling weight to the opinion of Dr. George Siniapkin, who completed a very restrictive RFC questionnaire with respect to plaintiff. (Pl.'s Brf., Dkt. No. 8). That argument, however, necessarily subsumes the issue of whether the ALJ's RFC determination was supported by substantial medical and/or other evidence. For the reasons stated below, this court concludes that the ALJ's RFC determination was not supported by substantial evidence. As a result, the ALJ's step-five analysis, and the ultimate finding that plaintiff was not disabled, were tainted. Accordingly, the court recommends a remand for further administrative proceedings to properly assess the medical evidence and plaintiff's RFC.

## VI. RFC/TREATING PHYSICIAN

### A. Legal Standards

#### 1. RFC

Residual functional capacity ("RFC") is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and

7

continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Id.* (citing, inter alia, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

As noted above, the ALJ determined that plaintiff had the RFC to perform "light work," with a few additional limitations. Under 20 C.F.R. § 404.1567(b), light work is defined as follows:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very

little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Social Security Ruling 83-10 elaborates on the requirements of light work:

> Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. . . . Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

SSR 83-10, 1983 WL 31251, at *5-6. *See also Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) ("The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time.").

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran v. Barnhart*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment

9

for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

**B.      Analysis**

In January 2012, plaintiff's treating physician, George Siniapkin, M.D., completed an RFC questionnaire. (T. 383-84). Dr. Siniapkin opined that plaintiff could sit for 30 minutes before needing to change positions; could stand for 20 minutes before needing to change positions; could sit, stand, and walk for about two hours per activity in an eight hour work day; would require frequent periods of walking during an eight hour work day; would require a job that would allow her to shift positions at will; would require unscheduled breaks during an eight hour work day; should elevate her legs while sitting; should rarely lift 10 pounds or less; should never lift more than 20 pounds; could occasionally twist and stoop; could rarely crouch/squat; and should never climb. (*Id*.) Dr. Siniapkin also concluded that plaintiff's pain and other symptoms would frequently interfere with her concentration, and that she would be absent more than four days per month due to her impairments. (T 384).

The ALJ incorporated, into her RFC determination, significant exertional limitations, but did not credit the disabling limitations found by Dr. Siniapkin. (T. 18-29). The ALJ explained:

> Although Dr. Siniapkin is a treating source, and does have a longitudinal relationship with the claimant, the undersigned finds that his conclusions do not deserve controlling weight, or even significant weight in determining the claimant's residual functional capacity. The undersigned does agree that the claimant is subject to some limitations, which preclude heavy lifting or carrying, frequent bending, crouching or climbing, and overhead reaching with the right upper extremity. Accordingly, the Administrative Law Judge has limited the claimant to the reduced range of light exertional activities assessed

above. However, as discussed throughout this decision, additional limitations are not supported by the clinical findings, or the objective nerve study findings that fail to show any evidence of a neurological deficit, or the mild and essentially unremarkable diagnostic studies.

(T. 28).

The ALJ's decision documents, in some detail, the results of plaintiff's prior spinal X-rays, MRIs, and nerve studies which documented only "mild" degenerative changes to the lumbar spine, including bulging discs, and "no significant . . . foraminal compromise" or narrowing[1] (T. 24, 25, 255, 290, 366); no remarkable issues with thoracic spine (T. 24, 367); "small," "muti[-]level" disc protrusions of the cervical spine, with at most "mild" foraminal encroachment at C4/C5, and no "significant spinal canal stenosis"[2] (T. 26-27, 312, 410-11); and no evidence, from a nerve conduction study, of an "objective neurological abnormality" or any nerve involvement (T. 25, 255, 301, 319). In challenging Dr. Siniapkin's RFC findings, the ALJ also cites numerous physical examinations of plaintiff by other medical providers who documented that, although plaintiff had restrictions in her range of motion in the lumbar and cervical spine and right shoulder, and displayed periodic muscle spasms,

---

[1] "Spinal nerves pass through an opening in the spinal column known as the foramen. The process of disc degeneration or bulging causes the foramen to become narrower. Once the foraminal opening reaches a point of compressing the nerves inside the spinal column, pain, numbness, tingling, and muscle weakness often occur." http://www.spinaldisorders.com/neural-foraminal-narrowing.htm

[2] "In lumbar stenosis, the spinal nerve roots in the lower back are compressed, or choked, and this can produce symptoms of sciatica–tingling, weakness or numbness that radiates from the low back and into the buttocks and legs–especially with activity. Spinal stenosis pain in the neck (cervical spinal stenosis) can be far more dangerous by compressing the spinal cord. Spinal cord stenosis may lead to serious symptoms, including major body weakness or even paralysis." http://www.spine-health.com/conditions/spinal-stenosis/what-spinal-stenosis

11

she generally walked with a normal gait and was able to perform straight leg raises.[3] (T. 25-26, 29, 256-57, 297, 300-01, 320, 366). The ALJ further points to perceived inconsistencies between Dr. Siniapkin's clinical findings[4] and his very restrictive RFC findings with respect to plaintiff. (T. 24-25, 26, 27-28). Most significantly, Dr. Siniapkin did not see plaintiff between December 2010 and October 2011, and his two appointments with plaintiff in 2011, before he completed his RFC questionnaire, indicated one "essentially negative" physical exam and then documented the removal of a cyst on plaintiff's calf, without any reference to her neck, back, or shoulder problems. (T. 27, 406).

But the most significant medical evidence on which the ALJ relies in rejecting the treating physician's restrictive RFC questionnaire is the April 2012 report and medical source statement of consulting medical examiner Albert Paolano, M.D., who also examined plaintiff in December 2010. (T. 28-29, 342-44, 438-446). Dr. Paolano estimated that plaintiff would be able to frequently lift and carry ten pounds, but could only occasionally lift and carry between eleven and twenty pound weights. (T. 28, 441). Dr. Paolano opined that plaintiff could frequently push, pull, and reach above shoulder level with her left arm, but could never use the right arm to reach overhead, and could only occasionally use her right arm to reach otherwise, or to push and pull. (T. 443). He concluded that plaintiff could occasionally climb stairs and ramps, bend,

---

[3] Positive straight leg raise results are indicative of a herniated disc. http://www.webmd.com/back-pain/medical-history-and-physical-exam-for-a-herniated-disc.

[4] Dr. Siniapkin's treatment notes indicate that he saw plaintiff approximately 12 times between March 2010 and January 2012. (T. 27, 308, 406-07).

balance, stoop, kneel, crouch and crawl, but could never climb ladders or scaffolds. (T. 444). The ALJ found that Dr. Paolano's "April 2012 assessment [was] generally consistent with the medical evidence, which shows some limitation of motion, some muscle spasms, only early, mild and minimal degenerative changes and no evidence of neurological dysfunction." (T. 29).

The ALJ rejected, as overly restrictive, Dr. Paolano's assessment that plaintiff could sit, stand and walk for only three hours each during an eight-hour workday. (T. 28-29, 442). Instead, the ALJ found that the plaintiff "is able to complete the standing, sitting and walking requirements of light work." (T. 29). This court concludes that the ALJ erred in coming to this conclusion, and that a remand to the Commissioner is necessary to properly assess and articulate if and how plaintiff is able to meet the standing, sitting, and walking requirements of light work under 20 C.F.R. § 404.1567(b).

First, the ALJ improperly made conclusory statements about the plaintiff's ability to sit, stand, and walk, instead of specifying the functions plaintiff is capable of performing. *See, e.g., Burton v. Colvin*, No. 6:12-CV-6347, 2014 WL 2452952, at *10 (W.D.N.Y. June 2, 2014) (the ALJ erred by failing specifically to determine plaintiff's ability to sit, stand, walk, lift, carry, and bend in the context of an eight-hour workday); *Clark v. Barnhart*, No. 02-CV-4626, 2003 WL 22139777, at *3 (E.D.N.Y. Sept. 16, 2003) (in describing RFC for light work, more exacting description of the claimant's ability, *e.g.*, to stand or walk, is necessary, rather than mere resort to conclusory labels). Presumably, the ALJ was suggesting that plaintiff could, at least,

13

stand and/or walk for six hours in an eight-hour workday and sit for at least two-hours–the physical requirement for the most typical type of light work, as articulated by S.S.R. 83-10. However, as noted above, a variation of light work requires "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Because of the ALJ's failure to specify plaintiff's RFC, the court cannot determine if the ALJ concluded that plaintiff could sit for long enough in an eight-hour workday–presumably six hours–to satisfy the requirements for this type of light work. *See White v. Secretary of Health and Human Services*, 910 F.2d 64, 66 (2d Cir. 1990) (a doctor's report that the plaintiff had no limitations on standing and walking did not support the ALJ's conclusion that plaintiff could perform a full range of light work, because the report also stated that plaintiff could only sit for four hours in an eight-hour workday and had limitations on handling, pushing, and pulling, which would not satisfy the requirements for the light work that involved mostly sitting with some pushing and pulling of arm and leg controls).

Whatever the ALJ concluded with respect to plaintiff's ability to stand, walk, and/or sit over an eight-hour workday, she marshaled no medical evidence to support such a conclusion but, instead, improperly substituted her own judgment for the only competent medical opinions of record. *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (an ALJ may choose among properly submitted medical opinions, but may not set his own expertise against that of physicians who submitted opinions to him) (citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998) (in the absence of a supporting medical opinion, the ALJ cannot arbitrarily substitute his own judgment

14

for competent medical opinion)).[5] As noted, the ALJ rejected, not only the opinion of plaintiff's treating doctor that plaintiff could only stand, walk, and sit for two hours each during an eight-hour workday, but also the opinion of the consulting examiner that plaintiff only stand, walk, and sit for three hours each during a workday.[6] *See, e.g., Tricic v. Astrue,* No. 6:07-CV-997 (NAM), 2010 WL 3338697, at *3-4 (N.D.N.Y.

---

[5] *See also Royal v. Astrue*, No. 5:11-CV-456 (GTS/ESH), 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (while ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion) (citing, *inter alia*, *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)) (Rep't-Rec.), *adopted*, 2012 WL 5438945 (N.D.N.Y. Nov. 7, 2012).

[6] The ALJ presumably did not credit this part of Dr. Paolano's opinion because she concluded that it would not satisfy the RFC requirement for light work. Dr. Paolano's answers on the medical source statement are arguably ambiguous; they may suggest that plaintiff could stand for three hours and walk for three hours during a workday, for a total of six hours of standing and/or walking, which might arguably satisfy the RFC requirements for one type of light work. Such a broad interpretation of Dr. Paoloano's medical source statement is inappropriate given his prior, December 2010 report, in which, after a physical examination of plaintiff, he concluded that she "seems to be limited in her ability to perform any kind of significant physical activity." (T. 344). Because, as noted above, SSR 83-10 states that the ability to stand is often more critical than the ability to walk for unskilled light jobs, an RFC that limited plaintiff to three hours of standing during a workday would not support a finding that she could perform the full range of simple light work. In any event, the Second Circuit has rejected an expansive interpretation of a similar medical source statement in *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990). In completing the RFC assessment portion of a medical source report, the treating doctor in *Vargas* stated that the plaintiff "could sit up to two hours at a time and a total of six hours in an eight-hour day. She could stand up to one hour at a time and a total of four hours in an eight-hour workday. She could walk up to thirty minutes at a time and a total of two hours in an eight-hour workday." *Id.* The *Vargas* court concluded that "the [ALJ] erroneously concluded that Mrs. Vargas could 'stand and walk at least six hours in an eight-hour day. . .'" by mis-interpreting the doctors report to mean that, "after Mrs. Vargas completed the four hours of standing permitted by [her treating doctor], she could undertake an additional two hours of walking. . . . This was a distortion of the attending physician's report. To walk, a person must stand; the two hours of walking must be included in the four hours of standing, not added to it." *Id. See also Santiago v. Sullivan*, No. 90 Civ. 7172, 1991 WL 150197, at *6 (S.D.N.Y. Aug. 1, 1991) (A doctor reported that plaintiff "could stand for a total of two hours in an eight-hour day and walk for a total of one to two hours"; under *Vargas*, plaintiff's total time on his feet is not more than two hours, rather than four hours); *Hiller v. Astrue*, 11-CV-4131, 2012 WL 4511374, at *2 (E.D.N.Y. Sept. 28, 2012) (applying *Vargas*).

15

Aug. 24, 2010) (the ALJ's determination that plaintiff could stand/walk and sit for about six hours in an eight-hour workday was not supported by substantial evidence where two treating doctors opined that plaintiff should avoid prolonged sitting and/or standing, and no examining doctor provided a specific opinion about plaintiff's ability to sit or stand for particular periods of time); *DiVetro v. Commissioner of Social Sec.*, No. 5:05-CV-830 (GLS/DEP), 2008 WL 3930032, at *12-13 (N.D.N.Y. Aug. 21, 2008) (the record lacks any assessment from either a treating source or a consultant supporting a finding of plaintiff could sit for eight hours in a given workday; this portion of the ALJ's RFC determination was not well-supported); *Maginnis v. Astrue*, No. 5:11-CV-36, 2012 WL 2046883, at *6-7 (D. Vt. Mar. 14, 2012) (the ALJ erred because his RFC determination as to plaintiff's ability to lift and carry and to stand and/or walk during an eight-hour day, was not supported by the opinions of either treating doctor, to which the ALJ purportedly gave significant weight) (Rep't-Rec.), *adopted*, 2012 WL 2019701, at *1 (D. Vt. June 5, 2012) (the Magistrate Judge properly concluded that the RFC determination was not supported by substantial evidence because the ALJ gave more weight to the opinions of non-examining and non-treating sources over physicians who had fairly extensive treating relationships with the plaintiff). The ALJ did not cite any medical opinion evidence, and this court found none in the record, that would suggest that plaintiff was capable of the prolonged sitting, standing, and/or walking during an eight-hour workday, as the ALJ apparently concluded. *See, e.g., Burton v. Colvin*, 2014 WL 2452952, at *10 (no acceptable or other medical source opined that she was able to stand or walk most of

the workday; the ALJ erred by not explaining the basis for his unstated conclusion that plaintiff would be capable of walking for up to six hours per eight-hour day); *Andrews v. Astrue*, 7:10-CV-1202 (RFT), 2012 WL 3613078, at *9 (N.D.N.Y. Aug. 21, 2012) (there is no support in the medical record for the ALJ's RFC assessment that plaintiff can engage in light work; the ALJ failed to point to what evidence supports his findings, but instead, simply discounts the other medical opinions).[7]

The ALJ's observations about plaintiff's activities of daily living do not support his RFC finding as to plaintiff's ability to meet the standing, walking, and sitting requirements for light work. (T. 16-17, 29). None of the very limited daily activities that plaintiff acknowledged demonstrate her capacity for prolonged standing, walking, or sitting. In any event, "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Stoesser v. Comm'r of Soc. Sec.*, No. 08-CV-643 (GLS/VEB), 2011 WL 381949, at *6-7 (N.D.N.Y. Jan. 19, 2011) (claimant's daily activities–including cleaning the house, watching television and playing video games, cooking simple meals, and shopping for groceries–did not support the ALJ's finding that plaintiff could perform sedentary work over an eight-hour workday in light of plaintiff's testimony that he

---

[7] The record did include a Physical RFC Assessment that opined that plaintiff could stand/walk and/or sit six hours in an eight-hour workday. (T. 351). The ALJ did not cite this assessment, presumably because it was not entitled to any weight, as it was prepared, not by a doctor, but by a "Single Decision Maker." (T. 355). *Andrews v. Astrue*, 2012 WL 3613078, at *9 (the ALJ correctly did not accord any weight to a disability analyst's RFC opinion because she is not a physician). Interestingly, in this case, as in *Andrews*, the ALJ's RFC determination appeared to reflect the findings of the lay disability analyst, but had no support in the competent medical evidence).

17

could not sit for more than 30 minutes to an hour without standing up) (Rep't-Rec.), *adopted*, 2011 WL 381941 (N.D.N.Y. Feb. 3, 2011).

In sum, this court concludes that the ALJ's RFC determination, particularly the finding that plaintiff "is able to complete the standing, sitting and walking requirements of light work," (T. 29), is not stated with sufficient particularity and is not supported by substantial evidence. On remand, the Commissioner should properly address the totality of the medical opinion and other evidence, assess and articulate plaintiff's RFC with sufficient specificity, and present the evidence upon which the Commissioner relies to support the RFC determination. If, on remand, the ALJ determines that plaintiff has non-exertional impairments, and if those non-exertional impairments "significantly limit the range of work" permitted by his exertional impairments, the ALJ may be required to consult a vocational expert ("VE"). *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986).

## VII. <u>NATURE OF REMAND</u>

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). The plaintiff does not contend, and this court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). Given the extensive delays in plaintiff's administrative case to date, the court urges the Commissioner to expedite proceedings

on remand.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 2, 2015

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge